UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC HANSEN

    Plaintiff,

-vs-                                                      Case No: 18-cv-1762

JOHN DEERE SHARED SERVICES, INC,
d/b/a JOHN DEERE HORICON WORKS

    Defendant.

## COMPLAINT

       This is a civil action against John Deere Shared Services, Inc. d/b/a John Deere Horicon Works, ("Deere") alleging deprivation of plaintiff Eric Hansen's rights under the Americans with Disabilities Act, 42 U.S.C. § 12203, *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADAAA"), § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), under Wisconsin common law for bad faith insurance, and alternatively under Section 510 of 29 U.S.C., U.S.C., § 1140 ("ERISA"). Plaintiff Hansen alleges that defendant Deere unlawfully discriminated and retaliated against him in violation of these statutes by terminating his employment because of his disability. Plaintiff further alleges that defendant committed bad faith when it denied him short term disability salary continuation benefits by terminating him despite knowing, or recklessly failing to ascertain, that the claim for benefits should have been paid. Plaintiff

alleges in the alternative that defendant unlawfully terminated him in order to keep him from obtaining ERISA-protected benefits. Plaintiff seeks damages in compensation for the injuries caused by the defendant's conduct and compensatory and punitive damages for defendant's willful, intentional, malicious or wanton violation of his rights.

## I. JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(a).

2. Plaintiff has complied with all administrative prerequisites for the initiation of a civil court proceeding under the ADAAA, up to and including obtaining a right to sue notice from the Equal Employment Opportunity Commission and commencement of this action within 90 days of plaintiff's receipt of such notice.

3. The Eastern District of Wisconsin is the proper venue for this action pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## II. PARTIES

4. Plaintiff Eric Hansen is an adult resident of the State of Wisconsin currently residing at 521 Union Street, Appleton, Wisconsin, 54911.

5. Defendant Deere is a corporation doing business in Wisconsin whose primary business address is One John Deere Place, Moline, Illinois, 61265. The Registered Agent for defendant is C T Corporation System, 301 S. Bedford Street,

Suite 1, Madison, Wisconsin, 53703. Defendant is an employer within the meaning of the ADAAA and ERISA, and is a recipient of federal financial assistance within the meaning of the Rehabilitation Act.

### III.  FACTUAL ALLEGATIONS

6.  Plaintiff was hired by Deere in 2001 as a product development mechanical engineer, a full-time position that made him eligible for valuable employee benefits, including but not limited to health insurance, short and long term disability insurance, life insurance, and retirement investment contributions, each of which are plans that Deere established and maintains for the purpose of providing benefits to its employee participants.

7.  Deere's short term disability benefit provides salary continuance for employees who miss more than five consecutive days of work due to an injury or illness that disables the employee from work.  Eligibility for this benefit requires sufficient medical documentation of an employee's disabling condition and further requires a specific process to be followed that consists of the following steps: 1) Employee submits a request for disability pay to Deere's Disability Services; 2) Employee authorizes Deere to request information from employee's medical providers; 3) Employee's medical provider completes an "Attending Provider Statement," and 4) Employee's treating medical provider completes a Work Release form prior to the employee's return to work.

8. Because of his hire date in 2001 and his length of service, as of at least January 1, 2014, plaintiff was eligible for 12 months of short term disability salary continuance at 100 percent of his monthly salary.

9. Deere's long term disability insurance benefits ("LTD") begin after short term disability salary continuance end. Eligibility for the LTD benefits is determined based on a review of the applicable medical documentation by Deere's medical director or its disability management insurer (the Reed Group) and follows a process similar to that required for short term disability salary continuance.

10. For the first 24 months of LTD, a Deere employee is deemed to be totally disabled when the employee is unable to perform the duties of the assigned job with reasonable accommodations. After 24 months of LTD, an employee is deemed to be totally disabled when the employee is unable to perform the duties of any job for which the employee is or may reasonably become qualified to perform.

11. For employees who start LTD prior to the age of 62, the LTD benefit of 60 percent of the employee's monthly salary will be paid until the earliest to occur of the following events: 1) age 65 or the date on which the 42nd monthly benefit is paid, whichever is later; 2) recovery from disability; 3) date of death; 4) termination of employment; 5) retirement; or 6) failure to comply with the conditions and actions necessary to remain eligible for LTD benefits.

12. By providing these benefits to employees, determining employee eligibility for these benefits, and issuing payment on employee claims for benefits, Deere acts as an insurance company as that term is understood under Wisconsin Law and owes a fiduciary duty to its employees/insureds.

13. During plaintiff's more than 15 years of employment with Deere, he consistently met or exceeded all reasonable performance expectations.

14. Plaintiff suffers from several physical and mental impairments that substantially limit a number of major life activities and make achievement in those activities unusually difficult. Those conditions include Major Depressive Disorder, Anxiety, Ulcerative Colitis, Obsessive Compulsive Disorder, Musculoskeletal Pain and herniated discs in his neck, and Attention Deficit Disorder.

15. Beginning at least in 2009, Deere became aware of plaintiff's disabilities when he experienced an extended episode of these impairments that required his use of Family Medical Leave Act ("FMLA") leave and the utilization of Deere's short term disability salary continuance.

16. Because of these conditions and their severity, at various times after 2009, plaintiff applied for and received medical leave and the benefits of Deere's short term disability benefits.

17. Beginning in June 2015, plaintiff began to believe that his supervisor was setting him up for failure, in efforts to rid himself and Deere of a disabled employee. The supervisor, who had only a few months earlier denied plaintiff's

5

request for a privacy wall as an accommodation for a stressful work environment, noted several subjective and unfair performance criticisms in his mid-year review of the plaintiff and outlined a "plan for success" for the duration of 2015 that plaintiff was expected to accomplish.

18. Thereafter, plaintiff made every effort to accomplish the "plan for success" outlined by his supervisor, however, it became clear that the plan was not reasonably designed for his success, but was instead set up to fail him. Buoyed by the subjective nature of engineering work, his supervisor consistently nitpicked Mr. Hansen's accomplishments, deriding and otherwise criticizing minute details of the completed tasks in order to find some issue to keep the purported performance deficiencies alive.

19. At the time, plaintiff was struggling with his mental and physical health and was attending regular physical therapy sessions to address his severe neck pain from degenerative discs in his upper back and neck. His physician recommended a leave of absence beginning in October 2015 and the leave of absence was approved by Deere as short term disability salary continuance.

20. On November 24, 2015, as required under Deere's policies for an employee to return to work after a medical leave of absence, plaintiff's physician completed Deere's Return to Work form, authorizing him to return to work on December 7, 2015, indicating that he could perform his current job with accommodations.

21.     After Deere received plaintiff's physician's completed Return to Work form, Deere's Occupational Health physician spoke with plaintiff's physician about plaintiff's previous accommodation requests and on December 4, 2015, plaintiff met with Deere's Occupational Health physician for a "Return to Work Evaluation," which is required under Deere's policies for an employee to return to work after a medical leave of absence.

22.     In December 2015, plaintiff's wife was diagnosed with breast cancer; he utilized FMLA from December 21 through 23 in order to meet with the surgical oncologist and attend other appointments related to her care and treatment plan.  Once it became certain that her cancer was highly complicated and more serious than first thought, she was referred to the Regional Cancer Center at Froedtert for treatment, which involved numerous trips to Milwaukee.

23.     During this time, plaintiff's supervisor became increasingly insistent that his end-of-year evaluation comments be completed.  Plaintiff was not only recuperating from his own serious health conditions, but was struggling with his wife's very serious health situation, and informed his supervisor of his difficulties in completing the task.

24.     Plaintiff even requested that his wife's physician write a letter on his behalf, and requested that the letter be placed in his medical records file at Deere and shared the letter's information with his supervisor.  Because of these difficulties, he requested that he be given until the end of January 2016 to submit

his end-of-year evaluation comments as an accommodation for his wife's illness and his own very recent return from medical leave.

25. Per Deere policy, employees are allowed until March of the following year to complete end-of-year evaluation comments if the employee was on leave.

26. Nevertheless, this request was denied. After a factory shutdown from December 24, 2015 through January 3, 2016, plaintiff returned to work on January 4, 2016 totally exhausted after spending the entire time off dealing with his wife's care and treatment. He was told by his supervisor that he needed to complete the end-of-year evaluation comments "now" or he would be considered insubordinate.

27. Plaintiff did his best to complete his comments, despite the trauma of his wife's illness and his own health issues, such that his supervisor received the document and made his final comments on it sometime before January 11, 2016.

28. On the late afternoon of Friday, January 29, 2016, plaintiff was given the choice between a severance or a performance improvement plan ("EPI"), presumably based on the end-of-year review. He signed the EPI indicating that he received it.

29. Thereafter, he made great efforts to meet the EPI. But once again, his supervisor overlooked any of his accomplishments, instead repeating the

subjective criticisms of the previous year that he was not meeting the plan requirements.

30. Plaintiff utilized FMLA and vacation to be with his wife for her surgery and recuperation for the days February 11, 12 and 15, 2016. Upon his return, his supervisor accosted him (in a meeting with Human Resources) for missing a meeting and a deadline while on that FMLA leave.

31. This confrontation and ridicule from his supervisor was nearly the final straw in breaking plaintiff's already fragile mental health. He became very despondent and his ulcerative colitis started to flare-up again. His physician urged him to take an extended leave of absence to deal with these health issues.

32. On his physician's instructions, plaintiff applied for and was approved for another medical leave and short term disability salary continuance in early March 2016.

33. In order to be eligible for short term disability salary continuance, plaintiff submitted a request for disability pay to Deere's Disability Services and authorized Deere to request information from his medical provider, Dr. Li.

34. Thereafter, Dr. Li completed the required monthly "Attending Provider Statements," which indicated plaintiff was totally unable to work due to Major Depressive Disorder, Generalized Anxiety Disorder, and Obsessive Compulsive Disorder, and Deere approved plaintiff for short term disability salary continuance benefits.

35. On September 15, 2016, Dr. Li completed an "Attending Provider Statement" that mistakenly estimated plaintiff's return to work date to be September 12, 2016, or 3 days earlier than the date he signed the form.

36. At that time, Dr. Li had not completed Deere's "Return to Work" form nor had Deere's Occupational Health physician conducted a "Return to Work Evaluation" of plaintiff.

37. Upon receipt of this form, Deere terminated the plaintiff's employment for job abandonment.

38. Dr. Li later clarified in a letter to Deere that the estimated return to work date should have been October 11, 2016. Nevertheless, without having received the required "Return to Work" form from Dr. Li or had its own physician complete a Return to Work evaluation of the plaintiff, Deere refused to reinstate plaintiff's employment and short term disability and other benefits, but instead committed to its termination of the plaintiff.

## IV. FIRST CAUSE OF ACTION

### (Disability Discrimination – ADAAA & Rehabilitation Act)

39. For a first cause of action against Deere, plaintiff realleges each of the preceding paragraphs as though set forth here.

40. By engaging in the conduct described above, including without limitation terminating the plaintiff, Deere violated plaintiff's rights and discriminated against him because of his disabilities in violation of the ADAAA and the Rehabilitation Act.

41. Deere's unlawful conduct, as alleged above, caused plaintiff substantial damages, including but not limited to loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

## V.  SECOND CAUSE OF ACTION

**(Bad Faith Insurance)**

42. For a second cause of action against Deere, plaintiff realleges each of the preceding paragraphs as though set forth here

43. By engaging in the conduct described above, including without limitation, denying the plaintiff his short term disability continuance pay despite clear evidence of his eligibility and terminating those insurance benefits, Deere did not properly investigate plaintiff's claim and instead conducted its investigation in such a way as to prevent it from learning the true facts upon which the plaintiff's claim for short term disability salary continuance was based.

44. Deere's unlawful conduct, as alleged above, breached its fiduciary duty to plaintiff and was committed in bad faith towards the plaintiff.

45. Deere's unlawful conduct, as alleged above, caused plaintiff substantial damages, including but not limited to loss of employment, loss of past and future income and benefits, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

## VI. THIRD CAUSE OF ACTION – IN THE ALTERNATIVE

### (Interference & Retaliation - ERISA)

46. For a third cause of action against Deere, which plaintiff pleads in the alternative should it be determined that the short term disability continuance pay and/or long term disability insurance benefits are ERISA-covered welfare benefit plans, plaintiff realleges each of the preceding paragraphs as though set forth here.

47. By engaging in the conduct described above, including without limitation terminating plaintiff and his short and long-term disability benefits, and his health insurance and other benefits, Deere unlawfully interfered with plaintiff's ability to collect and be eligible for those benefits and retaliated against him for exercising his rights under those plans, in violation of in violation of ERISA Section 510.

48. Deere's unlawful conduct, as alleged above, caused plaintiff substantial damages, including but not limited to loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

## VII. CAUSE OF ACTION – PUNITIVE DAMAGES

49. Deere's conduct as described above was undertaken in wanton, willful and reckless disregard of the plaintiff's rights under the ADAAA and

12
Case 2:18-cv-01762-PP   Filed 11/07/18   Page 12 of 14   Document 1

Wisconsin common law, thereby entitling plaintiff to an award of punitive damages.

## VIII.  JURY DEMAND

WHEREFORE, Plaintiff demands a trial by jury of 12 persons and judgment in his favor on all his claims and relief as follows:

A. Lost short term disability salary continuance payments, with prejudgment interest thereon;

B. Lost long term disability insurance payments with prejudgment interest thereon;

C. Back wage and benefit loss, together with prejudgment interest thereon;

D. Front pay and benefit loss;

E. Loss of earning capacity;

F. Compensatory damages in an amount to be determined;

G. Punitive damages in an amount to be determined;

H. Plaintiff's reasonable attorneys fees and costs incurred in bringing this action and pursuing the prior administrative action;

I. An order enjoining defendant from further engaging in unlawful and discriminatory practices; and

J. Such other relief as the Court may deem just and proper.

Dated at Milwaukee, Wisconsin this 6th day of November 2018.

Respectfully submitted:

FOX & FOX, S.C.


s/ Peter J. Fox
Peter J. Fox
124 W. Broadway
Monona, WI 53716
T: 608-258-9588
F: 608-258-9105
111 E. Wisconsin Ave., Suite 1925
Milwaukee, WI 53202
T: 414-326-3260
F: 414-224-1411
E: pfox@foxquick.com
State Bar No. 1037925